**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Cherisse Bele and James Sullivan, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DISA GLOBAL SOLUTIONS, INC.,<br><br>Defendant. | Case No.: 4:25-cv-01165<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Cherisse Bele and James Sullivan ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendant DISA GLOBAL SOLUTIONS, INC. ("Defendant" or "DISA"), for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information including, *inter alia*, names, social security numbers, driver's license numbers, other government ID numbers, financial account information, and other data elements (collectively, "PII"); and for its failure to comply with industry standards to protect information systems that contain PII,[1] and allege as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed

[1] *Notice of Data Incident*, DISA, https://disa.com/notice (last visited March 5, 2025).

Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction. Defendant is a citizen of Texas.

2. This Court has general personal jurisdiction over Defendant because Defendant's principal place of business is located in the Houston Division of the Southern District of Texas, Defendant conducts substantial business in this district, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this district.

3. Venue is proper in the Houston Division of the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant's principal place of business is located in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

4. Plaintiff Cherisse Bele is a resident and citizen of Texas.

5. Plaintiff James Sullivan is a resident and citizen of Pennsylvania.

6. Defendant DISA Global Solutions, Inc. is a Delaware corporation with a principal place of business located at 11740 Katy Freeway, Suite 900, Houston, TX 77079. The registered agent for service of process is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## FACTUAL ALLEGATIONS

### DISA

7. Defendant DISA is a third-party administrator ("TPA") that allows employers to make informed staffing decisions by utilizing DISA's "comprehensive scope of services, including

drug and alcohol testing, background check, occupational health, transportation compliance, and financial due diligence."[2]

8. As a TPA, DISA gathers and stores PII of its customers' former, current, or prospective employees. Potential Class Members' PII is collected during that individual's employee screening that they undertake with their former, current, or prospective employer.[3]

9. As a TPA, DISA therefore knowingly collects and stores sensitive PII of its customers' former, current, or prospective employees, and has a resulting duty to secure such information from unauthorized access and exfiltration.

10. DISA expressly recognizes these duties, representing that "[p]rotecting your privacy is important to DISA Global Solutions, Inc."[4] Further, DISA states, "[w]e will not share any of this information with any third party without your express written consent and will take reasonable steps to protect the information you share with us from unauthorized access or disclosure."[5]

11. Despite its duties to safeguard individuals' PII, on April 22, 2024, DISA discovered that it was the victim of a cyber incident where an unauthorized third party accessed a portion of its network between February 9, 2024, and April 22, 2024 and procured certain PII (the "Data Breach" or "Breach").[6]

12. As a direct and proximate result of DISA's negligent failure to implement and follow basic security procedures, Plaintiff's and Class Members' PII—names, social security

[2] *The DISA Difference*, DISA, https://disa.com/disa-difference (last visited Mar. 11, 2025).
[3] *Notice of Data Breach*, Office of Vermont Attorney General, https://ago.vermont.gov/sites/ago/files/documents/2025-02-24%20DISA%20Global%20Solutions%20Data%20Breach%20Notice%20to%20Consumers.pdf (last visited Mar. 11, 2025).
[4] *Privacy Policy*, DISA, https://disa.com/privacy-policy (last visited Mar. 11, 2025).
[5] *Id.*
[6] *Notice of Data Incident, supra* n. 1.

numbers, driver's license numbers, other government ID numbers, financial account information, and other data elements—is now in the hands of cybercriminals.

13. Plaintiffs and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, and other harms caused by the unauthorized disclosure of their PII—risks which may last for the rest of their lives. Consequently, Plaintiffs and Class Members must devote substantially more uncompensated lost time, money, and energy to protect themselves, to the extent possible, from these crimes.

14. As a sophisticated company with an acute interest in maintaining the confidentiality of the PII entrusted to it, Defendant is well-aware of the numerous data breaches that have occurred throughout the United States and its responsibility for safeguarding PII in its possession.

**The Data Breach**

15. According to Defendant, on April 22, 2024, Defendant "discovered unauthorized access to certain systems in its network."[7]

16. Defendant claims that "[u]pon discovery, we immediately contained the incident and initiated an investigation with the assistance of third-party forensic experts. Our investigation determined that an unauthorized third party accessed a limited portion of our environment between February 9, 2024, and April 22, 2024, and procured some information."[8]

17. The compromised data includes affected persons' "name, social security number, driver's license number, other government ID numbers, financial account information, and other data elements."[9]

[7] *Notice of Data Incident, supra* n. 1.
[8] *Id.*
[9] *Id.*

18. According to a notice of data breach filed with the Attorney General of Maine, the Data Breach has affected 3,332,750 individuals ("Data Breach").[10]

19. Defendant began notifying affected persons on February 21, 2025.[11]

20. Defendant's letter also offered free credit monitoring services to those potentially impacted by the breach.

21. Defendant did not state why it was unable to prevent the Data Breach or which security feature failed.

22. Defendant did not state why it did not contact affected persons about the breach until 10 months after discovering the breach.

23. Defendant failed to prevent the data breach because it did not adhere to commonly accepted security standards and failed to detect that its databases were subject to a security breach.

**Injuries to Plaintiffs and the Class**

24. Shortly after February 21, 2025, Plaintiffs received a breach notification from Defendant indicating that their PII had been compromised during the Data Breach.[12] According to the notification letter, the Data Breach exposed Plaintiffs' name and Social Security number.

25. After the Data Breach, Plaintiffs have received a significant increase in phishing emails and/or spam calls daily. In response, Plaintiff Bele has disabled her voice mail.

26. In response to the Data Breach, Plaintiffs have spent significantly more uncompensated lost time checking their bank and credit card statements than they did prior to the Data Breach.

---

[10] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b823b27d-5fe2-4f09-8753-b362741d7f95.html (last visited Mar. 11, 2025).
[11] *See* Data Breach Notification Letters addressed to the Plaintiffs, attached hereto as Exhibit 1.
[12] *See* Exhibit 1.

27. Plaintiffs are very concerned about the theft of their PII and have and will continue to spend substantial amounts of uncompensated lost time and energy monitoring their credit status.

28. As a direct and proximate result of Defendant's actions and omissions in failing to protect Plaintiffs' PII, Plaintiffs and the Class have been damaged.

29. Plaintiffs and the Class have been placed at a substantial risk of harm in the form of credit fraud or identity theft and have incurred and will likely incur additional damages, including spending substantial amounts of uncompensated lost time monitoring accounts and records, in order to prevent and mitigate credit fraud, identity theft, and financial fraud.

30. In addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous hours and their own money repairing the impacts caused by this breach. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[13]

31. In addition to fraudulent charges and damage to their credit, Plaintiffs and the Class will spend substantial uncompensated lost time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions and changing passwords; (h) freezing and unfreezing credit bureau

---

[13] U.S. Dep't of Justice, *Victims of Identity Theft*, *2014* (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

32. Additionally, Plaintiffs and the Class have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendant, and loss of privacy.

**The Value of PII**

33. It is well known that PII, and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

34. According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[14]

35. People place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[15]

36. People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[16] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class members cannot obtain new numbers unless they become

---

[14] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.

[15] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.

[16] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.

a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."[17]

**Industry Standards for Data Security**

37. In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, and Capital One, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII, as well as of the foreseeable consequences of its systems being breached.

38. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a. Maintaining a secure firewall configuration;
b. Monitoring for suspicious or irregular traffic to servers;
c. Monitoring for suspicious credentials used to access servers;
d. Monitoring for suspicious or irregular activity by known users;
e. Monitoring for suspicious or unknown users;
f. Monitoring for suspicious or irregular server requests;
g. Monitoring for server requests for PII;
h. Monitoring for server requests from VPNs; and
i. Monitoring for server requests from Tor exit nodes.

[17] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.

39. The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[18] and protection of PII[19] which includes basic security standards applicable to all types of businesses.

40. The FTC recommends that businesses:

a. Identify all connections to the computers where you store sensitive information.

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

---

[18] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[19] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

41. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[20]

42. Because Defendant was entrusted with consumers' PII, it had, and has, a duty to consumers to keep their PII secure.

43. Consumers, such as Plaintiffs and the Class, reasonably expect that when they provide PII to companies or when those companies forward their PII to companies such as Defendant, that their PII will be safeguarded.

44. Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly maintained and adequately protected its systems, it could have prevented the Data Breach.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

46. The proposed Class is defined as follows:

[20] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

> All persons whose PII was maintained on Defendant's servers and was compromised in the Data Breach.

47. Plaintiffs reserve the right to modify, change, or expand the definitions of the proposed Class based upon discovery and further investigation.

48. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Although the precise number is not yet known to Plaintiffs, Defendant has reported that the number of persons affected by the Data Breach is 3,332,750.[21] The Class members can be readily identified through Defendant's records.

49. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether Defendant owed a duty or duties to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and obtaining their PII;

b. Whether Defendant breached that duty or those duties;

c. Whether Defendant failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

d. Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

e. Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

f. Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and the Class's PII secure and prevent loss or misuse of that PII;

g. Whether Defendant acted negligently in connection with the monitoring and protecting of Plaintiffs' and Class's PII;

h. Whether Defendant's conduct was intentional, willful, or negligent;

i. Whether Defendant violated any and all statutes and/or common law listed herein;

[21] *See supra* n. 10.

j. Whether the Class suffered damages as a result of Defendant's conduct, omissions, or misrepresentations; and

k. Whether the Class is entitled to injunctive, declarative, and monetary relief as a result of Defendant's conduct.

50. *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiffs, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiffs.

51. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, data breaches.

52. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiffs and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

53. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits

of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

54. *Manageability*: Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

55. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

56. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

57. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/ NEGLIGENCE PER SE

58. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

59. Defendant owed a duty of care to Plaintiffs and Class members to use reasonable means to secure and safeguard the entrusted PII, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems. These common law duties existed because Plaintiffs and Class members were the foreseeable and probable victims

of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and Class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant knew that it was more likely than not Plaintiffs and Class members would be harmed by such exposure of their PII.

60. Defendant's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII. Various FTC publications and data security breach orders further form the basis of Defendant's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

61. Defendant's violations of Section 5 of the FTC Act constitute negligence per se.

62. Defendant breached the aforementioned duties when it failed to use security practices that would protect the PII provided to it by Plaintiffs and Class members, thus resulting in unauthorized third-party access to the Plaintiffs' and Class members' PII.

63. Defendant further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiffs' and Class members' PII within its possession, custody, and control.

64. As a direct and proximate cause of failing to use appropriate security practices, Plaintiffs' and Class members' PII was disseminated and made available to unauthorized third parties.

65. Defendant admitted that Plaintiffs' and Class members' PII was wrongfully disclosed as a result of the breach.

66. The breach caused direct and substantial damages to Plaintiffs and Class members, as well as the possibility of future and imminent harm through the dissemination of their PII and the greatly enhanced risk of credit fraud or identity theft.

67. By engaging in the forgoing acts and omissions, Defendant committed the common law tort of negligence. For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class members' PII.

68. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class, their PII would not have been compromised.

69. Neither Plaintiffs nor the Class contributed to the breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and the Class have been put at an increased risk of credit fraud or identity theft, and Defendant has an obligation to mitigate damages by providing adequate credit and identity monitoring services. Defendant is liable to Plaintiffs and the Class for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year. Defendant is also liable to Plaintiffs and the Class to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PII, including the amount of uncompensated lost time Plaintiffs and the Class have spent and will continue to spend as a result of Defendant's negligence. Defendant is also liable to Plaintiffs and the Class to the extent their PII has been diminished in value because Plaintiffs and the Class no longer control their PII and to whom it is disseminated.

## COUNT II
## INVASION OF PRIVACY

70. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

71. Plaintiffs and Class members have objective reasonable expectations of solitude and seclusion in their personal and private information and the confidentiality of the content of personal information and non-public medical information.

72. Defendant invaded Plaintiffs' and the Class's right to privacy by allowing the unauthorized access to their PII and by negligently maintaining the confidentiality of Plaintiffs' and the Class's PII, as set forth above.

73. The intrusion was offensive and objectionable to Plaintiffs, the Class, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and the Class's PII was disclosed without prior written authorization from Plaintiffs and the Class.

74. The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs and the Class provided and disclosed their PII to Defendant privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

75. As a direct and proximate result of Defendants' above acts, Plaintiffs' and the Class's PII was viewed, distributed, and used by persons without prior written authorization and Plaintiffs and the Class suffered damages as described herein.

76. Defendant has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' and the Class's PII with a willful and conscious disregard of their right to privacy.

77. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiffs and the Class great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs and the Class have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and the Class, and Defendant may freely treat Plaintiffs' and the Class's PII with sub-standard and insufficient protections.

**COUNT III**
**UNJUST ENRICHMENT**

78. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiffs and the Class have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Defendant and that was ultimately compromised in the data breach.

80. Defendant, by way of its acts and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on security measures to secure Plaintiffs' and the Class's PII.

81. Defendant also understood and appreciated that the PII pertaining to Plaintiffs and the Class was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

82. Instead of providing for a reasonable level of security that would have prevented the breach—as is common practice among companies entrusted with such PII—Defendant instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and the Class. Nevertheless, Defendant continued to obtain the benefits conferred on it by Plaintiffs

and the Class. The benefits conferred upon, received, and enjoyed by Defendant were not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these benefits.

83. Plaintiffs and the Class, on the other hand, suffered as a direct and proximate result. As a result of Defendant's decision to profit rather than provide requisite security, and the resulting breach disclosing Plaintiffs' and the Class's PII, Plaintiffs and the Class suffered and continue to suffer considerable injuries in the forms of, *inter alia,* attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

84. Thus, Defendant engaged in opportunistic conduct in spite of its duties to Plaintiffs and the Class, wherein it profited from interference with Plaintiffs' and the Class's legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its conduct.

85. Accordingly, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court award relief in the form of restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically, the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiffs' and the Class's PII, and/or compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

a. For an order certifying the proposed Class, appointing Plaintiffs as Representatives of the proposed Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

b. For compensatory and punitive and treble damages in an amount to be determined at trial;

c. Payment of costs and expenses of suit herein incurred;

d. Both pre-and post-judgment interest on any amounts awarded;

e. Payment of reasonable attorneys' fees and expert fees;

f. Such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury.

Dated: March 12, 2025

Respectfully submitted,

/s/ *Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
S.D. Tex. Bar No. 30973
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Phone:214-744-3000
Fax: 214-744-3015
*jkendall@kendalllawgroup.com*

Charles E. Schaffer*
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
jgoldenberg@gs-legal.com

Brett R. Cohen*
**LEEDS BROWN LAW, P.C.**
One Old Country Road - Suite 347
Carle Place, New York 11514
Phone: 516-874-4505
bcohen@leedsbrownlaw.com

***Counsel for Plaintiffs and Proposed Class***
* Pro hac vice to be filed